MID-CITY INDUSTRIAL SUPPLY COMPANY, Plaintiff-Appellant, v. DONALD HORWITZ, Defendant-Appellee.

First District (1st Division) Nos. 83—2325, 84—328 cons.

Opinion filed March 25, 1985.—Rehearing denied April 25, 1985.

Fritzshall, Fritzshall & Bensinger, of Chicago, for appellant.

Forrest L. Ingram, of J. Barton Kalish & Associates, of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

The present appeal arises out of an action brought by plaintiff Mid-City Industrial Supply Company (Mid-City) to recover amounts owed under a purported personal guarantee for the debt of another executed by defendant Donald Horwitz. Plaintiff had previously brought an action against the original debtor, Wesco Products Company, Inc. (Wesco), but Wesco had filed a bankruptcy petition in Federal district court and the proceedings were stayed. Thereafter, plaintiff filed the instant action against Horwitz, the vice-president and a principal stockholder of Wesco. Plaintiff alleged that defendant had previously executed a document personally guaranteeing the debts of the now defunct Wesco Products Company and sought a recovery based on that guarantee. Defendant answered, denying that the document in question was a personal guarantee and alleged that the document was executed by him in his corporate or representative capacity as an agent for Wesco.

The case was tried without a jury. At the close of plaintiff's case

in chief, defendant moved for a directed finding under section 2—1110 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110.) The trial court granted defendant's motion, specifically finding that plaintiff had failed to satisfy its burden of proof in the following respects: (1) plaintiff failed to establish standing where the present corporate existence of Mid-City was in doubt; (2) plaintiff failed to establish that a demand for payment was ever made on defendant personally; and (3) plaintiff failed to make a *prima facie* showing that the instrument in question was a personal guarantee of defendant where the mode of execution could only indicate that the guarantee was a corporate obligation of Wesco Products, Inc. Accordingly, judgment was entered in favor of defendant and plaintiff appealed. We reverse and remand for further proceedings.

The record reveals that seven or eight years prior to the commencement of this suit, Mid-City had supplied Wesco with certain gears and other industrial supplies. These components were essential parts in certain universal joints manufactured by Wesco. During 1978 and the early part of 1979, Wesco's account with Mid-City was in arrears because Wesco was consistently unable to make timely payments. As a result, Mid-City stopped shipping supplies.

Being anxious for shipments to resume, Wesco's plant manager, Donald Kellner, contacted Mid-City to see if an agreement could be worked out. He was told that shipments would resume only upon full payment of all outstanding invoices, with payment for future orders to be tendered in advance of delivery. In the alternative, Mid-City would only ship supplies if defendant Horwitz personally guaranteed the debts of Wesco. Kellner told Mid-City to draw up the necessary documents, and a meeting was arranged between Alan Gutman, president of Mid-City, and Donald Horwitz.

The meeting took place on May 17, 1979, with five people in attendance. Gutman and his accounting manager, Almarie Williams, were present for Mid-City and Horwitz, Kellner and two others were present for Wesco. Neither company was represented by an attorney.

Williams testified that she brought two documents to the meeting which she had previously prepared. One was a guaranty contract copied from a preprinted form and the other was a letter describing terms and conditions for payment and delivery of the merchandise. Williams further testified that defendant initially resisted signing the guaranty document but Gutman refused to ship any goods without defendant's personal guarantee. Defendant then agreed to sign the document, but he wanted to make a few changes. The document states in relevant part:

"GUARANTEE

MID-CITY INDUSTRIAL SUPPLY CO.       Date May 17, 1979

Gentlemen:

We, the undersigned, for the purpose of inducing MID-CITY INDUSTRIAL SUPPLY CO. (*** [Seller]) to extend credit to, or accept a contract or purchase order of: Wesco Products Company, 1333 South Cicero, Cicero, Illinois 60650 [Buyer].

*** hereby jointly and severally guarantee unto said Seller, MID-CITY INDUSTRIAL SUPPLY CO., its successors and assigns, absolutely and unconditionally, the due and prompt payment by the Buyer to said Seller of any and all sums which are now owing or may hereafter become owing, from Buyer to said Seller, and we hereby jointly and severally agree to indemnify and save harmless said Seller against any and all loss, damage and expense of every nature *** by reason of any and all defaults on the part of the Buyer ***. The undersigned agrees that its liability hereunder to the Seller shall be absolute upon default by the buyer and that no action against the Buyer by the Seller shall constitute a condition precedent to such liability.

\* \* \*

In witness whereof, the undersigned has hereunto set his hand and seal (or caused this instrument to be executed by its duly authorized officer and its corporate seal to be hereunto affixed) the 17 day of May, 1979.

[Wesco Corporate Seal] [Signed] Don Horwitz Vice President (DH) [Initialled]."

The form also contained alternative methods for notarization, depending upon whether an individual or a corporation executed the document. The part which stated "To be executed for individual" was completely lined through and initialled by both Gutman and Horwitz. The part which stated "To be executed for Corporation" appears as follows:

"(To be executed for Corporation)

STATE OF ILLINOIS)

)SS.

COUNTY OF COOK  )

On the 17 day of May, 1979, before me came Donald Horwitz to me known, who being by me duly sworn, did depose and say that he resides at 1333 So. Cicero [handwritten in ink] DH and AG [initialled in ink]; that he is the President of Wesco Products Company; the corporation described in and which executed the foregoing instrument; that he knows the seal of said corpo-

ration; that the seal affixed to said instrument is such corporate seal, that it was affixed by order of the board of directors of said corporation; and that he signed his name thereto by like order.

          [Signed] Almarie Williams
                  Notary Public

[Notary Seal of
 Almarie Williams]     Notary Public State of Illinois      [Preprinted
                       My Commission Expires May 20, 1982   Notary
                       Issued thru Illinois Notary Assoc.       Stamp]."

Both Gutman and Horwitz then signed the letter giving payment and delivery terms. The letter also referred to the guaranty document and contained the following statement:

"Part of this agreement is a signed guarantee of payment by Donald Horwitz.

Mid-City Industrial Supply Co., in return for your valued business, will work hard for your company and will do anything within reason to keep your production going."

Defendant's objection to the admission of this letter into evidence was sustained. Gutman also testified during plaintiff's case in chief and corroborated Williams' testimony.

■ We will first address the issue of whether plaintiff made a *prima facie* showing that the instrument in question was a personal guarantee of defendant. The standard to be applied when ruling on a defendant's motion for a directed finding in a nonjury case is set out in *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43. There, the court stated that the trial judge should consider all of plaintiff's evidence, pass on credibility of witnesses, draw reasonable inferences from the testimony and generally consider the weight and quality of the evidence. This weighing process may result in the negation of some evidence necessary to the plaintiff's *prima facie* case, in which event the court should grant the defendant's motion and enter judgment in his favor. However, if sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny defendant's motion and proceed as if the motion had not been made.

After reviewing the record, it is clear the trial court believed that the guaranty document was unambiguously a corporate obligation on its face and therefore consideration of any extrinsic evidence was improper. Accordingly, the trial court did not comment on or consider the testimony of plaintiff's witnesses concerning the circum-

stances surrounding the execution of the document. Similarly, the trial court refused to admit into evidence the letter executed at the same meeting by the same individuals which tended to indicate that the guarantee was intended as a personal obligation of defendant. Instead, the trial court focused on the manner of execution of the guaranty document and concluded that the instrument could only be a corporate obligation. We believe the trial court erred in finding no ambiguity in the guaranty instrument and in refusing to admit the letter in evidence or consider other extrinsic evidence.

The existence of ambiguity in a contract is a question of law for the court. (*Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 436 N.E.2d 663.) An ambiguous contract is one capable of being understood in more than one sense (*State Security Insurance Co. v. Linton* (1978), 67 Ill. App. 3d 480, 384 N.E.2d 718) or an agreement obscure in meaning through indefiniteness of expression or having a double meaning. *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 414 N.E.2d 1152.

■ The issue here is whether the guaranty document, when construed as a whole, unambiguously reveals an intent to bind only Wesco, not defendant. In *Reed v. Fleming* (1904), 209 Ill. 390, 392, 70 N.E. 667, our supreme court held that "when the seal of the corporation is attached to a note and the name of the president of the corporation is signed to the note, with his official designation and the name of the corporation, the note is *prima facie* the note of the corporation." But where language in the body of the document conflicts with the apparent representation by the agent's signature, we believe the document is reasonably susceptible to more than one meaning and therefore extrinsic evidence should be considered in determining the intent of the parties. We note that in *Reed,* the supreme court examined both the manner of execution *and* the terms of the contract in order to determine whether the obligation in question was individual or corporate. The court concluded that since the note signed by the corporation's president called for the issuance of mortgage bonds which only the corporation could issue, the obligation was clearly corporate.

Applying the same methodology to the case at bar, we note that the guaranty document was designed as a guarantee of one to perform in the event of another's failure. As such, the document presupposed the existence of three parties—a creditor, Mid-City, a debtor, Wesco, and a guarantor of Wesco's debt. Provisions of the contract make this much clearer. For example, the guaranty document states that the "undersigned" would be absolutely liable to

Mid-City if Wesco defaulted and that no action against Wesco by Mid-City "shall be a condition precedent to such liability." Accordingly, the type of obligation incurred under the guaranty instrument belies the assertion that this obligation was intended to be solely Wesco's. Yet, considering the manner of execution and type of notarization, the "undersigned" would appear to be the debtor Wesco. Faced with such contrary indications on the face of the document, we believe the trial court erred in finding that the guaranty instrument was unambiguously a corporate obligation.

Where there is an ambiguity arising from the terms of the contract, the meaning may be derived from extrinsic facts surrounding formation. (*La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 384, 370 N.E.2d 188, *cert. denied* (1978), 436 U.S. 925, 56 L. Ed. 2d 768, 98 S. Ct. 2818.) Here, the facts surrounding formation reveal that Wesco needed certain gears supplied by plaintiff and that an alternative supplier was unavailable elsewhere. Plaintiff refused to deliver more gears because of the past payment practices of Wesco and insisted upon the personal guarantee of defendant. Defendant first resisted, then signed the document after making a few changes. Defendant also signed a letter wherein he acknowledged that "part of this agreement is a signed guaranty of payment by Donald Horwitz." In view of the foregoing, we find that when the documents and extrinsic evidence are considered together, plaintiff made a *prima facie* showing that the guaranty instrument was a personal obligation of defendant.

■ Next, plaintiff contends that the trial court erred in finding that it had not established by a preponderance of the evidence that it had standing to bring this suit. We agree.

The trial court's finding was grounded on the somewhat confused testimony of Mid-City's president concerning the legal effect of the sale of a major portion of plaintiff's assets to another concern. The question arose whether or not the plaintiff corporation was still in existence. Plaintiff's attorney indicated that Mid-City might have merged with another corporation and, if so, he wanted to substitute the new corporation's name. Plaintiff now states he withdrew this motion after determining that the corporation was still in existence but had merely changed its name.

The trial court's determination that plaintiff had not established standing was premised on the erroneous proposition that plaintiff had the burden of demonstrating its corporate existence by a preponderance of the evidence. A corporate litigant need not allege or prove its corporate existence unless its opponent has entered a plea

of *nul tiel* corporation. (*Darwin Co. v. Sweeney* (1982), 110 Ill. App. 3d 331, 442 N.E.2d 318.) This plea is an affirmative defense denying the existence of the alleged corporation and, when entered, the burden shifts to the corporate plaintiff to prove its corporate existence. (*Darwin Co. v. Sweeney* (1982), 110 Ill. App. 3d 331, 442 N.E.2d 318.) Here, the plea of *nul tiel* corporation was never made by defendant. Accordingly, plaintiff was not obligated to prove its corporate existence, and the trial court's finding of no standing based on plaintiff's failure of proof on this issue was error.

▪ Next, plaintiff claims the trial court erroneously concluded that no demand for payment was ever made on defendant personally. Plaintiff contends that defendant had adequate notice of Wesco's default since he was a major stockholder, vice-president and general manager of the company. Plaintiff further contends that defendant could not have been unaware of Wesco's financial problems and therefore he suffered no prejudice from plaintiff's failure to give actual personal notice. We agree.

In a suit brought on a collateral or continuing guarantee, such as the one sued on in this case, a *prima facie* case is made when the plaintiff enters proof of the original indebtedness, the debtor's default and the guarantee. (*Fort Dearborn National Bank v. Miller* (1913), 178 Ill. App. 450.) While the general rule is that a guarantor is entitled to reasonable notice of the default of the principal debtor, the right to this notice is not absolute. (*Mamerow v. National Lead Co.* (1903), 206 Ill. 626, 69 N.E. 504; *Swisher v. Deering* (1903), 204 Ill. 203, 68 N.E. 517.) Failure to notify a guarantor of the debtor's default has no other effect than to afford him a defense to the extent of the loss or damage sustained as a result of such failure. (*Swisher v. Deering* (1903), 204 Ill. 203, 68 N.E. 517.) This defense must be specially pleaded by the guarantor, and the plea and proof must also declare and show that the guarantor sustained a loss or damage resulting from the lack of notice. (*Fort Dearborn National Bank v. Miller* (1913), 178 Ill. App. 450.) A creditor is not required to give a notice of default to a guarantor where the guarantor has notice from an independent source. (*Heberling Medicine & Extract Co. v. Smith* (1916), 201 Ill. App. 126.) It also has been held that when directors, stockholders or officers of a corporation that are in a position to know the financial condition of their company act as guarantors of a corporate debt, they are chargeable with notice of the corporation's default and additional notice from the creditor is unnecessary. *Mamerow v. National Lead Co.* (1903), 206 Ill. 626, 69 N.E. 504; *Fort Dearborn National Bank v. Miller* (1913), 178 Ill.

484

App. 450.

■■ Applying these principles to the case at bar, it is clear that lack of notice of the debtor's default is a defense which must be pleaded and proved by defendant, not plaintiff. Accordingly, any failure of proof on this issue is irrelevant in making a determination of whether plaintiff has established a *prima facie* case. It is also clear that defendant, as vice-president, general manager and a major stockholder of Wesco, was chargeable with notice of Wesco's default. *Mamerow v. National Lead Co.* (1903), 206 Ill. 626, 69 N.E. 504; *Fort Dearborn National Bank v. Miller* (1913), 178 Ill. App. 450.

In view of the foregoing, we find that plaintiff established a *prima facie* case and therefore the trial court erred in granting defendant's motion for a directed finding at the conclusion of plaintiff's case in chief. Subsequent to the entry of judgment in defendant's favor, the trial court granted defendant's petition for attorney fees and costs pursuant to section 2—611 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—611.) Plaintiff filed a separate appeal on this order which was consolidated with the present appeal. Since we are reversing the original judgment entered in defendant's favor and further proceedings will be necessary to resolve this case, an award of costs and attorney fees under section 2—611 is, at this point, premature. Accordingly, we must also reverse the trial court's award of fees and costs pursuant to section 2—611.

Finally, defendant has filed several motions with this court which were taken with this case. We have reviewed the contentions raised by defendant therein and deny all of said motions.

Reversed and remanded for further proceedings.

McGLOON, P.J., and CAMPBELL, J., concur.