KEN CARLSON & ASSOCIATES, INC., Plaintiff-Appellee, v. SEARS, ROEBUCK AND COMPANY, Defendant-Appellant.

First District (1st Division)   No. 87—3520

Opinion filed August 22, 1988.

Alan W. Brothers and Ellen E. Douglass, both of Carney & Brothers, Ltd., of Chicago, for appellant.

Richard C. Spain and Brooke R. Whitted, both of Whitted & Spain, P.C., of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This appeal arises from a breach of contract action brought by plaintiff Ken Carlson against defendant Sears, Roebuck and Company (Sears). After a bench trial, judgment was entered in favor of Carlson, from which Sears appeals. For the reasons set forth below, we affirm.

Ken Carlson, president of Ken Carlson & Associates, is a casting director, an agent hired by theaters and corporations to locate talent

for their various projects. Carlson determines the type of talent needed for a particular project and identifies actors and celebrities with the requisite talent. From a field of candidates, the business selects the individual it wishes to hire. Carlson then contacts the individual on behalf of the business and presents an offer to the individual. For Carlson's services of matching talent to the particular projects, the business pays a fee, usually a percentage of the amount paid to the individual by the business, or a specified amount if the individual and the business fail to come to terms.

In late 1983 and early 1984, Sears, through Ronald L. Ramseyer, manager of Sears' national catalog division, entered into a written agreement with Carlson to locate a celebrity to pose for the cover of their Summer 1984 catalog. Stephanie Powers was identified as Sears' first choice, but Powers and Sears were unable to reach satisfactory terms because Powers demanded a fee that Sears considered excessive for one catalog cover. Sears terminated Carlson in February or March of 1984 and paid the specified fee of $3,500.

Prior to January 1984, the Sears apparel group, a division of Sears independent of the Sears catalog advertising department, decided to promote a line of clothing for the career woman. In February 1984, Ms. Powers, through a personal representative, presented an unsolicited merchandising proposal to the Sears apparel group that was rejected because the apparel group was looking for a name designer to endorse the clothing line.

In May or June 1984, the Sears catalog division, through Ramseyer, again contacted Carlson and requested that he help locate a celebrity to appear on the covers of four seasonal catalogs to be published over a one-year period. Sears again selected Stephanie Powers as its first choice. Ramseyer sent a letter to Carlson, date June 27, 1984, authorizing Carlson to make an offer to Powers on behalf of Sears, which included paying Ms. Powers $200,000. After brief negotiations, Powers and Sears agreed to $250,000, for which Powers would, in addition to the covers, engage in other services such as media dates and schedules for national ads, personal appearances, and a video cassette of television commercials.

A second written agreement (the letter agreement) dated July 18, 1984, was drafted by Carlson and executed without revision by Ramseyer on behalf of Sears on July 19, 1984. The letter agreement stated:

> "You have requested us to assist you in connection with performing the following services:
> CELEBRITY FOR FUTURE CATALOGS AND OTHER

SERVICES TO BE RENDERED BY THE SAID CELEB-
RITY

Our fee for said services shall be as follows:

(a) Ten percent (10%) of all amounts paid to the talent used on the covers and additional insert shots of said catalogs and all other amounts paid to said talent for advertising and promotional campaigns and similar matters;

(b) A minimum of three thousand five hundred dollars ($3,500.00) shall be paid to us whether said talent is contracted or not."

For services with respect to the catalogs and catalog promotions, Sears paid Carlson $25,000, plus expenses of $163.

In June or July 1984, the apparel group, unable to find a name designer to promote the career woman clothing line, decided to seek a celebrity to promote the clothing line. The apparel group decided on Ms. Powers. In September 1984, Ms. Powers met with representatives of the Sears apparel group. In July 1985, Sears and Powers entered into a written merchandising agreement (the merchandising agreement).

On or about June 20, 1985, Carlson & Associates through its attorney requested a copy of the merchandising agreement between Sears and Ms. Powers for the purpose of ascertaining whether Carlson could claim fees for the merchandising agreement under the letter agreement. Sears refused to provide the copy, denying any liability under the contract letter agreement.

In April 1986, Carlson brought suit against Sears, alleging that the letter agreement had contemplated services by Powers such as the merchandising agreement, and therefore Carlson was entitled to 10% of the amount Sears paid to Powers under the merchandising agreement. Carlson sought declaratory judgment, specific performance and money damages.

The trial court ruled that the letter agreement was ambiguous and that based on extrinsic evidence the parties had intended for the letter agreement to extend to the merchandising agreement between Sears and Ms. Powers. Sears was ordered to pay Carlson 10% of the money it had paid and would pay to Powers. The trial court denied Carlson's request for damages, costs, interest and specific performance. Sears appeals.

Carlson and Sears disagree over whether the letter agreement was ambiguous, but the principal issue is whether Carlson and Sears intended the letter agreement to extend to services rendered by Ms. Powers beyond the scope of the catalogs. Sears argues that the letter

agreement contemplated only the services Ms. Powers performed in connection with the catalogs, while Carlson argues that the "other services" and "similar matters" contemplated the merchandising agreement, which he and Ramseyer had discussed. Although the parties devoted considerable space in their briefs arguing the facts of the case, an examination of the record and the applicable law shows that the trial court committed no clear errors. Therefore the judgment is affirmed.

The first issue is whether the letter agreement was ambiguous. The disputed terms in the letter agreement are the words "OTHER SERVICES" in the capitalized portion of the letter agreement, and in part (a), the clause "all other amounts paid to said talent for advertising and promotional campaigns and similar matters." The trial court correctly ruled that the language of the letter agreement was ambiguous.

■■ ■ Ambiguity is a question of law, and a contract is ambiguous if it is reasonably capable of being understood in more than one sense. (*Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 481, 476 N.E.2d 1271, *appeal denied* (1985), 108 Ill. 2d 571.) It is clear, without enumerating the several points raised by Sears to show that the contract was ambiguous, that the disputed terms could reasonably refer either to services connected with the production, sale, and promotion of the catalogs, or to more extensive projects contemplated but not specified, such as the merchandising agreement. Further, the parties do not disagree merely on the meaning of the terms of the letter agreement, but on what the letter agreement was intended to cover. (See *Bell Fuels, Inc. v. Lockheed Electronics Co.* (1985), 130 Ill. App. 3d 940, 945, 474 N.E.2d 1312.) The intent of the letter agreement could not be determined without resort to extrinsic evidence. Therefore the trial court correctly ruled that the contract was ambiguous and correctly relied on extrinsic evidence to determine the intent of the parties.

■■ ■ The second, and principal, issue is whether the trial court correctly construed the letter agreement in finding that the parties intended to include the merchandising agreement within the scope of the letter agreement. Where a trial court relies on extrinsic evidence to determine the intention of the parties, the court's construction will not be disturbed unless contrary to the manifest weight of the evidence. (*John Allen Co. v. Neuendorf* (1978), 60 Ill. App. 3d 559, 377 N.E.2d 365.) The record in the instant case clearly shows that the trial court relied on the extrinsic evidence presented, made a reasonable ruling in a close case, finding that the parties intended to include

the merchandising agreement. The trial court's construction, therefore, cannot be ruled contrary to the manifest weight of the evidence.

Sears argues that the extrinsic evidence failed to disclose the mutual intent of the parties and that the trial court's finding that the parties intended to include the merchandising agreement was clearly erroneous because it relied on irrelevant evidence, failed to consider relevant and undisputed evidence, and misstated the evidence in the record. Sears' contention is without merit.

Sears contends that the court relied on the irrelevant fact that the apparel group was contemplating promotion of the career woman clothing line contemporaneously with the catalog sales division's relations with Carlson. The issue in construing the letter agreement, however, was whether the parties intended to include the merchandising agreement. It was therefore relevant that Sears' apparel group had been contemplating using Powers for the clothing line endorsements at approximately the same time Carlson was retained by the catalog division.

Sears then argues that the trial court failed to consider that the letter agreement itself, drafted by Carlson, said nothing of the merchandising agreement; that the merchandising agreement was not discussed between Ramseyer and Carlson; and that when Carlson first approached Ms. Powers' agent he mentioned only services for the catalogs. Sears also contends that Remseyer, as manager of the catalog division, could not have known what the apparel group was doing. Carlson, on the other hand, argues that a so-called "Cheryl Tiegs" package, a total package of catalogs, advertising, and product endorsements, was discussed from the beginning.

Although Carlson drafted the letter agreement, Sears entered into the arms-length negotiations with at least equal bargaining power. A corporation cannot escape its obligations by arguing that one hand knows not what the other was doing; Ramseyer may not have privy to the apparel group projects, but Carlson was not dealing merely with Ramseyer, but with Sears, Roebuck & Company through Ramseyer, who had apparent authority to bind Sears. Presumably someone at Sears, not too far removed from Ramseyer's position as national catalog division manager, knew or should have known that Ms. Powers was being considered contemporaneously by the catalog and apparel group departments.

In any event, Sears was in a superior position to know the specific nature of any merchandising agreement and its department's contemporaneous relations with Powers. If Sears had intended to limit the scope of the agreement with Carlson, the relations with

Powers should have been disclosed and excluded from the letter agreement. As the trial court stated, Sears easily could have excluded the merchandising agreement. Requiring Sears to clarify any ambiguities, or to add language excluding the merchandising agreement, merely placed the burden on the party with superior knowledge of the negotiations between Ms. Powers and the Sears apparel group.

With respect to the remaining arguments, the record supports the trial court's finding that at the very least the concept of a merchandising contract was mentioned in discussions between Carlson and Ramseyer. The trial court's construction was reasonable and not clearly erroneous.

Sears finally argues that because the extrinsic facts could not disclose the mutual intent of the parties, it was necessary to resort to the rules of contract construction, which the trial court misapplied. This argument is without merit. The trial court's finding, based on the evidence presented, that the parties intended to include the merchandising agreement is not erroneous. Although the trial court's finding of the intent of the parties concededly would construe the agreement against Sears and not the drafter Carlson, the finding is not inconsistent with the facts presented above, upon which the trial court ruled. Therefore, Sears' argument that the court misapplied the rules of construction must be rejected.

In summary, the language of the letter agreement shows that it was reasonably susceptible to the interpretation urged by either party. The trial court relied on extrinsic evidence to rule that the parties intended to include the merchandising agreement as part of the "other services" mentioned in the letter agreement. The record shows that the trial court made a ruling reasonably supported by the facts in a close case. Therefore, the judgment in favor of Ken Carlson & Associates is affirmed.

Affirmed.

QUINLAN and MANNING, JJ., concur.