W. DUKE KIMBRELL, PLAINTIFF v. DIANE C. ROBERTS, DEFENDANT

No. COA06-1110

(Filed 18 September 2007)

**1. Guaranty— expiration provision—ambiguous—properly submitted to jury**

The trial judge properly submitted to the jury the issue of whether a guaranty agreement had expired where the conflicting constructions offered by the parties were both reasonable constructions of the provision.

**2. Guaranty— notice of claim—prejudice**

The trial court did not err by denying defendant's motions for directed verdict and judgment n.o.v. based on plaintiff's alleged

KIMBRELL v. ROBERTS

[186 N.C. App. 68 (2007)]

failure to provide a contractually required notice of claim on a guaranty. Although plaintiff contended that he had provided notice in a letter, that letter was not timely, even if the substance provided notice. However, the burden was on defendant to show that the lack of notice prejudiced her.

**3. Trials— requested instruction not given—encompassed in another**

The trial judge did not abuse his discretion by not submitting to the jury a requested instruction where another issue which was submitted encompassed the substance of the requested instruction.

**4. Trials— motion for new trial—denial not abuse of discretion**

The trial judge did not abuse his discretion by denying defendant's motion for a new trial based on errors raised previously in the opinion where it had been held that those were not errors or abuses of discretion.

Appeal by Defendant from judgment entered 26 January 2006 and order entered 24 February 2006 by Judge Karl Adkins in Superior Court, Gaston County. Heard in the Court of Appeals 25 April 2007.

*Kilpatrick Stockton LLP, by J. Robert Elster, Tonya R. Deem, and James J. Hefferan, Jr., for Plaintiff-Appellee.*

*James, McElroy & Diehl, P.A., by Bruce M. Simpson, for Defendant-Appellant.*

McGEE, Judge.

W. Duke Kimbrell (Plaintiff) filed a complaint on 27 October 2003 against Diane C. Roberts (Defendant), and her husband, F.C. Roberts, Jr. (Mr. Roberts), who is not a party to this appeal, alleging that Defendant and Mr. Roberts were principals or insiders of Acme Services, Inc. (Acme Services) in Gastonia, North Carolina. Plaintiff entered into a stock and debenture purchase agreement (the purchase agreement) with Acme Services on 2 October 1992, whereby Plaintiff purchased 57,652 shares of Series C stock (the stock) from Acme Services for $220,230.64.

Plaintiff also purchased a debenture from Acme Services at the same time in the face amount of $1,779,769.36. Under the debenture,

KIMBRELL v. ROBERTS

[186 N.C. App. 68 (2007)]

Acme Services agreed to pay the principal sum of $1,779,769.36 on 2 October 2002, plus interest from 2 October 1992. At the same time as these transactions, Plaintiff, as lender, and Acme Services, as borrower, entered into a credit agreement related to the debenture. Plaintiff and Acme Services also entered into a buy-sell agreement with respect to the stock.

On the same date, Defendant and Mr. Roberts executed a guaranty in which they guaranteed "payment and performance by and all obligations of Corporation under" the purchase agreement, the debenture, the credit agreement, and the buy-sell agreement. Under the guaranty, the "Shareholder" was Plaintiff, the "Corporation" was Acme Services, and "Guarantors" were Defendant and Mr. Roberts. Paragraphs seven and eight of the guaranty provided as follows:

7. EXPIRATION OF GUARANTY. This Guaranty and the Guarantors' obligations hereunder shall expire at such time as the Shareholder, or his estate, shall no longer be the owner of any of the Series C Shares or all or any part of the Debenture, except to the extent that there is a pending claim or claims under this Guaranty of any of the Corporate Obligations.

8. NOTIFICATION OF CLAIM. Shareholder shall notify Guarantors of any claim hereunder within thirty (30) days after default by Corporation under any of the Corporate Obligations. Any notice hereunder shall be deemed to be duly given if delivered or sent by pre-paid, first class, registered mail to:

Mr. and Mrs. F. C. Roberts, Jr.
P. O. Box 2359
Gastonia, North Carolina 28053-2359

In his complaint, Plaintiff further alleged that "[o]n December 4, 200[2], [Plaintiff] gave notice of default under the terms of the Loan Documents and demanded payment in full of the outstanding indebtedness due on the Debenture." Plaintiff also alleged the following: "Pursuant to the Loan Documents, [Defendant and Mr. Roberts] are primarily, jointly and severally indebted to [Plaintiff] in the principal amount of $1,779,769.36, plus all accrued and unpaid interest at 12% per annum and all reasonable costs, expenses, and attorneys' fees that [Plaintiff] incurs in enforcement of the Guaranty."

Defendant filed an answer and counterclaim on 12 January 2004, denying the allegation that Plaintiff provided notice of default under

the debenture. Defendant also raised, *inter alia*, the defense that the guaranty had expired. Specifically, Defendant alleged that the guaranty had expired on 16 December 2002, at the time Plaintiff ceased to be an owner of any of the stock.

At trial, Plaintiff introduced into evidence a letter dated 4 December 2002, which stated the following:

> Acme, Inc.
> Attention F. C. Roberts, Jr.
> Post Office Box 2359
> Gastonia, NC 28053-2359
>
> Dear [Mr. Roberts]:
>
> This letter will serve as notice of demand for payment in full of the 12% Debenture for $1,779,769.36 due October 2, 2002, including any unpaid interest due.
>
> If I have not received payment by January 10, 2003, I will pursue all legal remedies available to collect the amounts owed.
>
> I look forward to hearing from you.
>
> > Sincerely,
> >
> > [Plaintiff]

Defendant testified that she never received Plaintiff's 4 December 2002 letter. Defendant further testified that Roberts Family Ventures, LLC (Roberts Family Ventures), Defendant's and Mr. Robert's family estate planning LLC, purchased the stock from Plaintiff on 16 December 2002 for approximately $232,000.00. Defendant testified she was under the impression she was relieved of her obligations under the guaranty when Roberts Family Ventures purchased the stock.

At the close of Plaintiff's evidence, Plaintiff and Defendant each moved for a directed verdict, and the trial court denied both motions. Defendant did not present evidence. Both parties renewed their motions for a directed verdict, and the trial court again denied the motions.

Both Plaintiff and Defendant submitted requests for issues to be submitted to the jury and for jury instructions. The trial court submitted the following issues to the jury:

KIMBRELL v. ROBERTS

[186 N.C. App. 68 (2007)]

Issue One:

1. Have the obligations of . . . [D]èfendant under the Guaranty Agreement dated October 2, 1992 expired?

     Answer: _____.__

If you answer Issue One "No", you shall proceed to Issue Two.

If you answer Issue One "Yes", do not answer Issue Two.

Issue Two:

2. What amount is . . . [P]laintiff entitled to recover from . . . [D]efendant for breach of contract?

     Answer: _____

The jury answered the first issue "No" and determined under the second issue that Plaintiff was entitled to $2,505,719.91. The trial court entered judgment accordingly. Defendant filed a motion for judgment notwithstanding the verdict or for a new trial on 5 February 2005. The trial court denied both motions on 24 February 2006. Defendant appeals.

I.

[1] Defendant argues the trial court erred by denying Defendant's motion for directed verdict and motion for judgment notwithstanding the verdict. In support of this argument, Defendant contends that under the plain language of the guaranty, the guaranty expired upon Plaintiff's sale of the stock.

Upon a motion for a directed verdict,

a trial court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference arising from the evidence. Any conflicts and inconsistencies in the evidence must be resolved in favor of the non-moving party. If there is more than a scintilla of evidence supporting each element of the non-moving party's claim, the motion for a directed verdict should be denied. The same standard applies to motions for judgment notwithstanding the verdict.

*Jernigan v. Herring*, 179 N.C. App. 390, 392-93, 633 S.E.2d 874, 876-77 (2006) (citations omitted), *disc. review denied, Jernigan v. Rayfield*, 361 N.C. 355, 645 S.E.2d 770 (2007).

"The nature and extent of the liability of a guarantor depends on the terms of the contract as construed by the general rules of construction." *Jennings Communications Corp. v. PCG of the Golden Strand, Inc.*, 126 N.C. App. 637, 641, 486 S.E.2d 229, 232 (1997). "When a court is asked to interpret a contract its primary purpose is to ascertain the intention of the parties." *International Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989). "If a contract is plain and unambiguous on its face the court may interpret it as a matter of law, but where it is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the jury." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). An ambiguity exists where the terms of the contract are reasonably susceptible to either of the differing interpretations proffered by the parties. *Id.* " 'The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous.' " *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988)).

In the present case, the guaranty read as follows:

7. EXPIRATION OF GUARANTY. This Guaranty and the Guarantors' obligations hereunder shall expire at such time as the Shareholder, or his estate, shall no longer be the owner of any of the Series C Shares or all or any part of the Debenture, except to the extent that there is a pending claim or claims under this Guaranty of any of the Corporate Obligations.

Defendant argues that under the plain language of this provision, the guaranty would expire if Plaintiff ceased to be the owner of either the stock or the debenture. Therefore, Defendant argues, when Plaintiff ceased to be the owner of the stock, although Plaintiff continued to own the debenture, the guaranty expired. In contrast, Plaintiff argues that under the plain language of this provision, the guaranty would expire only if Plaintiff ceased to be the owner of both the stock and the debenture. Therefore, Plaintiff argues that because he still owned the debenture, the guaranty did not expire upon the sale of the stock.

Although both parties contend that the terms of the guaranty are plain and unambiguous, each party attaches a different meaning to those terms. As we recognized above, this is some indication that the terms of the guaranty were ambiguous. *See Glover*, 109 N.C. App. at 456, 428 S.E.2d at 209. We hold that the two conflicting constructions

proffered by the parties are both reasonable constructions of the expiration provision of the guaranty. Therefore, we hold that the expiration provision was ambiguous. *See id.* As such, the trial court properly submitted the issue to the jury. Accordingly, we hold the trial court did not err by denying Defendant's motions for directed verdict and judgment notwithstanding the verdict.

**[2]** Defendant also argues the trial court erred by denying her motion for directed verdict and motion for judgment notwithstanding the verdict because Plaintiff did not provide Defendant with the contractually required notice of a claim. Specifically, Defendant argues that Plaintiff's failure to comply with the provisions regarding notice caused the guaranty to expire. In a related argument, Defendant contends the trial court erred by shifting to Defendant the burden of proof of notice. For the reasons that follow, we disagree and affirm the trial court.

Neither party has cited any authority concerning the effect of the failure of a party to give contractually required notice of default under a guaranty, and our research reveals no North Carolina case directly on point. However, "[c]ourts generally hold that the creditor's failure to give notice of default, where required, does not wholly discharge the obligation, but only releases the guarantor to the extent he is injured or prejudiced by lack of notice." 38 Am. Jur. 2d *Guaranty* § 104 (1999). Similarly, 38A C.J.S. *Guaranty* § 75 (1996) provides:

> Although there is authority to the contrary, it is held that a failure to give notice of the principal's default, or negligence in giving such notice, in a case where the guarantor is entitled to notice, does not of itself discharge him from liability and bar a recovery on the guaranty. There must be not only a want of notice within a reasonable time, but also some actual loss or damage thereby caused to the guarantor, and if such loss or damage does not go to the whole amount of the claim, but is only in part, the guarantor is discharged only pro tanto.

We find an out-of-state case, *Russell Nat. Bank v. Smith*, 556 A.2d. 899 (Pa. Super. Ct. 1989), *appeal denied*, 568 A.2d 1248 (Pa. 1989), which employed this principle, to be instructive. In *Russell Nat. Bank*, the purchasers entered into an installment sales contract with a dealer for the purchase of a mobile home. *Id.* at 900. The dealer then assigned the contract to a bank for a sum. *Id.* Pursuant to the "full recourse" assignment contract, the dealer agreed to repurchase the contract upon default of the installment sales contract by the pur-

chasers and upon demand by the bank. *Id.* Subsequently, the purchasers defaulted on the installment sales contract, and the bank sent the purchasers a notice of default and intent to execute. *Id.* The purchasers did not cure the default and the bank sent them a notice that their mobile home had been repossessed. *Id.*

The bank then demanded that the dealer repurchase the contract and, following the dealer's refusal, the bank sued the dealer. *Id.* at 900-01. The Superior Court of Pennsylvania held that, by its actions, the bank had repossessed the mobile home. *Id.* at 901. The Pennsylvania court also recognized that the bank was required by statute to give notice to the dealer of the bank's intent to execute, which the bank did not do. *Id.* at 901-02. However, relying upon Am. Jur. 2d and C.J.S. the Court held:

> The [b]ank's failure to comply with this notice requirement, however, does not of itself discharge the [d]ealer from its obligation under the full recourse provision of the assignment contract. Rather, the lack of notice releases the [d]ealer from its liability under the contract only if the [d]ealer was injured by the lack of notice and then only to the extent of the injury. *See* 38 Am. Jur. 2d Guaranty § 107, at 1113 (1968) (failure to give notice of debtor's default to guarantor "only releases the guarantor to the extent that damage or prejudice may have been occasioned to him by lack of notice"); 38 C.J.S. Guaranty § 63, at 1225 (1943) ("[T]here must be not only a want of notice within reasonable time, but also some actual loss or damage thereby caused to the guarantor, and if such loss or damage does not go to the whole amount of the claim, but is only in part, the guarantor is discharged only pro tanto.").

*Id.* at 902. The Court then held that the dealer was not harmed by a lack of notice from the bank and that "the [d]ealer's obligations under the assignment contract remain[ed] intact." *Id.*

The parties in the present case also have not cited, nor have we found, any North Carolina case law regarding which party has the burden of proof on the issue of notice of default. On this issue, there appears to be a split of authority in other jurisdictions: "Some courts require the creditor to prove it provided notice of . . . default to the guarantor if such notice is required, though other cases hold that failure to provide such notice is an affirmative defense and not part of the creditor's prima facie case." 38 Am. Jur. 2d *Guaranty* § 117 (1999). Similarly, 38A C.J.S. *Guaranty* § 118 (1996) provides:

Where notice to the guarantor of the principal's default is required as a condition to fixing liability on him, . . . the burden in some jurisdictions is on plaintiff to show that such notice was given to the guarantor, or, if it was not given, to show a sufficient excuse therefor, such as that the principal was insolvent; and it is then incumbent on the guarantor to rebut the prima facie case which plaintiff, by showing such insolvency, has made. In other jurisdictions, however, where defendant asserts want of notice, the burden is on him to show, as a matter of defense, the failure to give such notice or negligence in doing so and that he has sustained damage thereby.

Although not directly on point, our Supreme Court spoke to a similar issue in *Smith v. N.C. Farm Bureau Mutual Ins. Co.*, 321 N.C. 60, 361 S.E.2d 571 (1987), and we find the Court's analysis instructive. In *Smith*, the plaintiff sought to recover from the defendant insurance company under a fire insurance policy. *Id.* at 61, 361 S.E.2d at 572. The trial court granted the defendant's motion for a directed verdict on the ground that the plaintiff failed to show that he properly submitted the proof of loss required by the policy. *Id.* at 61-62, 361 S.E.2d at 572.

The Supreme Court recognized that a divided panel of the Court of Appeals had reversed, noting that "under the provisions of N.C.G.S. § 58-180.2, the failure to comply with the proof of loss provisions does not relieve the insurer of its obligation to pay under the policy if the failure was for 'good cause' and did not prejudice the insurer's ability to defend." *Id.* at 62, 361 S.E.2d at 573 (citing *Smith v. N.C. Farm Bureau Mutual Ins. Co.*, 84 N.C. App. 120, 122-23, 351 S.E.2d 774, 776 (1987) (citation omitted)). However, because N.C.G.S. § 58-180.2 was silent as to which party bore the burden of proof on the issues of "good cause" and "prejudice," the majority in the Court of Appeals relied upon *Great American Insurance Co. v. C.G. Tate Construction Co.*, 303 N.C. 387, 279 S.E.2d 769 (1981), to hold that the plaintiff had the burden of proving "good cause" and the defendant insurance company had the burden of proving "prejudice." *Id.* at 62, 361 S.E.2d at 573. The majority held that because the plaintiff had presented evidence sufficient to raise a jury question as to "good cause," and because the insurance company did not offer evidence of prejudice, the directed verdict for the defendant should be reversed. *Id.* at 63, 361 S.E.2d at 573. The dissent challenged the majority's extension of *Great American Insurance Co.*, which had dealt with automobile liability insurance, to fire insurance cases. *Id.* at 63, 361 S.E.2d at 573.

**KIMBRELL v. ROBERTS**

[186 N.C. App. 68 (2007)]

Our Supreme Court affirmed, recognizing that the only issue before it was the "issue of the proper placement of the burdens of proof[.]" *Id.* at 65, 361 S.E.2d at 575. Our Supreme Court stated as follows:

> In *Great American [Insurance Co.]* we held that the insured has the burden of showing "good faith" in failing to properly notify the insurance company. 303 N.C. at 399, 279 S.E.2d at 776. Once that burden is carried, "the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay." *Id.* We reasoned that the insurer must bear the burden of proof on the issue of prejudice because it is in the better position to offer proof on the issue and because such allocation of the burden encourages the insurer to investigate quickly once it has actual notice. 303 N.C. at 398, 279 S.E.2d at 776. The majority in the Court of Appeals correctly concluded that the same reasoning applied equally as well to the proof of loss provisions of a fire insurance contract. Accordingly, the majority held that the insured under the fire insurance policy must bear the burden of proof as to "good cause" for the failure to give timely proof of loss, but the insurer must bear the burden of proof as to prejudice. We agree.

*Id.* at 66, 361 S.E.2d at 575.

The reasoning of *Smith* and *Great American Insurance Co.* applies equally to the present case. In that a failure to give notice when required only discharges a guarantor to the extent the guarantor is prejudiced thereby, it is appropriate to place on the guarantor the burden of proof on this issue. The guarantor is in a better position to show the extent to which the guarantor was prejudiced or injured by a failure of the creditor to give the required notice under the guaranty.

In the present case, the guaranty required that Plaintiff give notice as follows:

> 8. NOTIFICATION OF CLAIM. Shareholder shall notify Guarantors of any claim hereunder within thirty (30) days after default by Corporation under any of the Corporate Obligations. Any notice hereunder shall be deemed to be duly given if delivered or sent by pre-paid, first class, registered mail to:

> Mr. and Mrs. F. C. Roberts, Jr.·
> P. O. Box 2359
> Gastonia, North Carolina 28053-2359.

The guaranty did not specify the effect of the failure to give such notice. Plaintiff contends that his 4 December 2002 letter sufficed as notice under the guaranty. However, even if the substance of the letter put Defendant on notice, the letter was not sent within thirty days of Acme Services' default on 2 October 2002, and therefore did not comply with the guaranty provision.

In accordance with the authorities cited above, this failure was not fatal. In order to discharge Defendant from all liability under the guaranty, the failure to give the contractually required notice must have caused some prejudice, loss, or damage to Defendant. *See* 38 Am. Jur. 2d *Guaranty* § 104; 38A C.J.S. *Guaranty* § 75. Moreover, if Defendant had the burden of proof on this issue, the simple failure to provide notice required under the guaranty did not defeat Plaintiff's *prima facie* claim under the guaranty. *See* 38 Am. Jur. 2d *Guaranty* § 117; 38A C.J.S. *Guaranty* § 118.

An Illinois case, *Mid-City Indus. Supply Co. v. Horwitz*, 476 N.E.2d 1271 (Ill. App. Ct. 1985), applying these principles, is analogous to the present case and instructive. In *Horwitz*, the plaintiff sought to recover under a purported personal guaranty executed by the defendant. *Id.* at 1273. At the close of the plaintiff's case-in-chief at a bench trial, the defendant moved for a directed finding and the trial court granted the motion. *Id.* Accordingly, the trial court entered judgment for the defendant, finding that, *inter alia*, the plaintiff had failed to satisfy its burden of proof by "fail[ing] to establish that a demand for payment was ever made on [the] defendant personally." *Id.*

The Court recognized that "[i]n a suit brought on a collateral or continuing guarantee, such as the one sued on in this case, a *prima facie* case is made when the plaintiff enters proof of the original indebtedness, the debtor's default and the guarantee." *Id.* at 1277. The Court further recognized as follows:

> Failure to notify a guarantor of the debtor's default has no other effect than to afford him a defense to the extent of the loss or damage sustained as a result of such failure. This defense must be specially pleaded by the guarantor and the plea and proof must also declare and show that the guarantor sustained a loss or damage resulting from the lack of notice.

*Id.* (citations omitted). The Court held:

> Applying these principles to the case at bar, it is clear that lack of notice of the debtor's default is a defense which must be

pleaded and proved by [the] defendant, not [the] plaintiff. Accordingly, any failure of proof on this issue is irrelevant in making a determination of whether [the] plaintiff has established a *prima facie* case.

*Id.* Therefore, the Court held that the trial court erred by granting the defendant's motion for a directed finding and by entering judgment for the defendant. *Id.*

Likewise, in the present case, any failure to comply with the notice provisions of the guaranty did not entitle Defendant to a directed verdict. Rather, we hold the burden was on Defendant to show that the lack of notice prejudiced her. Accordingly, the trial court did not err by denying Defendant's motion for directed verdict and motion for judgment notwithstanding the verdict on this basis. Moreover, the trial court did not err by shifting the burden of proof to Defendant on the issue of notice.

## II.

**[3]** Defendant argues the trial court erred by refusing to submit to the jury Defendant's requested issue regarding notice. " 'It is an elementary principle of law that the trial judge must submit to the jury such issues as are necessary to settle the material controversies raised in the pleadings and supported by the evidence.' " *Griffis v. Lazarovich*, 161 N.C. App. 434, 440, 588 S.E.2d 918, 922-23 (2003) (quoting *Uniform Service v. Bynum International, Inc.*, 304 N.C. 174, 176, 282 S.E.2d 426, 428 (1981)), *disc. review denied*, 358 N.C. 375, 598 S.E.2d 135 (2004). However, " '[t]he number, form and phraseology of the issues lie within the sound discretion of the trial court, and the issues will not be held for error if they are sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause.' " *Id.* at 440, 588 S.E.2d at 923 (quoting *Chalmers v. Womack*, 269 N.C. 433, 435-36, 152 S.E.2d 505, 507 (1967)).

In the present case, Defendant requested that the following issue be submitted to the jury:

1. Did Plaintiff properly notify Defendant of a claim under the Guaranty within 30 days after default by Acme Services, Inc.?

    Answer: _____

(If you answer Issue 1 "yes," you should proceed to Issue 2. If you answer Issue 1 "no," do not answer any further issues.)

The trial court did not submit this issue to the jury. Rather, the trial court submitted the following issue to the jury:

> 1. Have the obligations of . . . [D]efendant under the Guaranty Agreement dated October 2, 1992 expired?

The trial court instructed the jury as follows:

> The first issue reads: Have the obligations of . . . [D]efendant under the Guaranty Agreement dated October 2, 1992, expired. . . . [D]efendant acknowledges signing the Guaranty Agreement and assuming the corporate obligations set forth in the guaranty. However, . . . [D]efendant contends and . . . [P]laintiff denies that her obligation expired upon . . . [P]laintiff's sale of the preferred stock or . . . [P]laintiff failed to give proper notice to . . . [D]efendant. On this issue . . . [D]efendant has the burden of proof. This means that . . . [D]efendant must prove by the greater weight of the evidence that her guaranty expired upon the sale of preferred stock or that . . . [P]laintiff failed to give proper notice to . . . [D]efendant. Finally, as to this first issue on which . . . [D]efendant has the burden of proof, if you find by the greater weight of the evidence that the guaranty expired upon the sale of the preferred stock or that . . . [P]laintiff failed to give proper notice to . . . [D]efendant, it would be your duty to answer this issue yes in favor of . . . [D]efendant. If you fail to so find, it would be your duty to answer this issue no in favor of . . . [P]laintiff. If you answer Issue 1 no, you shall proceed to answer Issue 2. If you answer Issue 1 yes, this is your verdict, do not answer Issue 2.

It is clear that the first issue submitted to the jury by the trial court encompassed the substance of Defendant's requested instruction. The trial court instructed the jury that if it found that either the guaranty expired upon the sale of the stock, or that Plaintiff failed to give proper notice to Defendant, it would be the duty of the jury to answer the issue "Yes" in favor of Defendant. Accordingly, the trial court did not abuse its discretion by failing to submit to the jury Defendant's requested issue.

### III.

[4] Defendant argues that on the basis of the errors alleged in its previous assignments of error, the trial court erred by denying Defendant's motion for a new trial. However,

DAVIDSON CTY. BROADCASTING, INC. v. ROWAN CTY. BD. OF COMM'RS

[186 N.C. App. 81 (2007)]

[i]t has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge.

*Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982).

In the present case, we have already determined that the trial court did not commit error or abuse its discretion. Therefore, we hold the trial court did not abuse its discretion by denying Defendant's motion for a new trial.

Moreover, because we find for Plaintiff on the merits of the case, we need not reach Plaintiff's cross-assignments of error.

Affirmed.

Judges JACKSON and STROUD concur.